[Cite as *State v. Beach*, 2015-Ohio-3445.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. Nos. | 26021 |
|---|---|---|
| | | 27124 |

Appellee

v.

THOMAS D. BEACH

Appellant

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   CR 10 09 2538 (A)
           CR 11 01 0141

DECISION AND JOURNAL ENTRY

Dated: August 26, 2015

MOORE, Judge.

{¶1} Defendant, Thomas D. Beach, appeals from the judgments of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part, and remands this matter for further proceedings consistent with this decision.

I.

{¶2} This appeal arises from two criminal cases against Mr. Beach. In the first case, Mr. Beach was charged with two counts of forgery in violation of R.C. 2913.31(A)(3). These charges resulted from Mr. Beach cashing two forged checks. The first check that he cashed at Walmart was purportedly drawn on the account of the Akron Metropolitan Housing Authority ("AMHA"), and the second that he cashed at Roush's Market, was purportedly drawn on the account of Oriana House. Mr. Beach pleaded not guilty to the charges and waived his right to a

jury trial. The case proceeded to a bench trial, and the trial court found him guilty on both forgery charges and deferred sentencing until after resolution of the second case.

{¶3} In the second case, Mr. Beach was charged with one count of obstructing justice in violation of R.C. 2921.32(A)(5), and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2). Although the record does not contain many details about these charges, they appear to have resulted from Mr. Beach having involved himself in the investigation of the murder of a man named Garland Dean. Mr. Beach pleaded not guilty to the charges. Thereafter, he withdrew his not guilty pleas and entered a plea of guilty to the charge of obstructing justice, and the court dismissed the charge of having weapons while under disability upon the motion of the State.

{¶4} The trial court then sentenced Mr. Beach on both cases. In separate sentencing entries dated June 13, 2011, the trial court sentenced Mr. Beach to twelve months of imprisonment on each forgery count, to be served concurrently with each other, but consecutively to the obstruction of justice sentence, for which it imposed five years of imprisonment. In both cases, the trial court further ordered that Mr. Beach pay court costs and attorney fees.

{¶5} Mr. Beach appealed from the sentencing entry in the forgery case, but this Court dismissed the appeal for the failure to file a brief. Thereafter, Mr. Beach filed a motion to reopen his appeal, which we granted. This case is numbered Case No. 26021 on appeal.

{¶6} Mr. Beach also filed a motion for a delayed appeal from his obstruction of justice conviction, which this Court granted. This case is numbered Case No. 27124 on appeal. We consolidated the two cases for argument.

{¶7}  Mr. Beach now presents five assignments of error in Case No. 26021, and three assignments of error in Case No. 27124, for our review.  We have re-arranged and consolidated certain assignments of error to facilitate our discussion.

II.

**CASE NO. 26021 – ASSIGNMENT OF ERROR I**

THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR FORGERY[.]

**CASE NO. 26021 – ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. BEACH BY OVERRULING HIS MOTION FOR ACQUITTAL UNDER OHIO CRIMINAL PROCEDURE RULE 29[.]

{¶8}  In his first and third assignments of error in Case No. 26021, Mr. Beach argues that the State presented insufficient evidence to support his forgery convictions.  We disagree.

{¶9}  "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production.  *Id.* at 390 (Cook, J. concurring).  In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶10} Here, Mr. Beach was convicted of forgery in violation of R.C. 2913.31(A)(3), which provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.01(G) provides that "'[f]orge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." R.C. 2913.01(H) provides that "'[u]tter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." The version of R.C. 2901.22(B) in effect at the relevant time here, provided that "[a] person acts knowingly, regardless of [] purpose, when [the person] is aware that [the person's] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [the person] is aware that such circumstances probably exist."

{¶11} At trial, the State presented the testimony of Linda Benson, Zachary Smith, Deputy Todd Buck of the Summit County Sheriff's Office, and Secret Service Special Agent Keith Verzi. Ms. Benson testified that she is employed as the accounting manager at AMHA, and Mr. Smith testified that he works in the accounting department at Oriana House. Both testified that their employers utilize the "Positive Pay" program through their respective banks. Through this program, the account holder submits a list of checks written on their accounts to the banks, and when a check drawn on their respective accounts is presented for payment, the bank

compares the check to the list that the account holders have provided. If the check is not on the list, then the bank notifies the account holder of the discrepancy.

{¶12} On August 10, 2010, Ms. Benson received notification from AMHA's bank that a check had been received that was made payable to Mr. Beach from the AMHA in the amount of $175.98. Mr. Beach was not on the AMHA payroll, he was not a resident, a contractor, a vendor, or a landlord in the AMHA system. The signature on the check was "Becky Stubb," and no one in the AMHA Finance Department or the executive level had that name. In addition, the check had only one signature line, and AMHA checks have two signature lines. Accordingly, Ms. Benson instructed the bank to deny the check.

{¶13} Mr. Smith received notification from Oriana House's bank of a check dated August 14, 2010, in the amount of $215.11, payable to Mr. Beach from Oriana House, had been presented for payment. Mr. Smith identified the check as fraudulent after determining several discrepancies existed between the check presented to the bank and the standard checks issued by Oriana House. He contacted the bank, which informed him that the bank had automatically rejected the check. Mr. Smith then looked into Oriana House's records, and he determined that Mr. Beach had been a client. In some situations, Oriana House does issue checks to their clients, but there was no reason to do so in Mr. Beach's case. The signature line on the check read "Anthony Thomas," but Oriana House did not recognize that name as an authorized signatory on its accounts.

{¶14} Deputy Buck testified that he works for the Summit County Sheriff's Office and is assigned to the AMHA Fraud Investigations Department. On August 17, 2010, he received a complaint from the AMHA that there was a fraudulent check issued to Mr. Beach that was cashed approximately one week prior at a Walmart. Deputy Buck obtained a picture of Mr.

Beach and went to Walmart, and there he obtained a still shot of the person who had cashed the check, and it appeared to be Mr. Beach, wearing sunglasses and a hat. A copy of the picture was admitted into evidence.

{¶15} Deputy Buck testified that, the next day, he received an AMHA complaint pertaining to a check that was issued to someone other than Mr. Beach, which had been cashed at Roush's Market. After the deputy contacted Roush's Market, the market sent its surveillance film out to be developed. After receiving the developed images, the market sent to Deputy Buck copies of checks that it had received which had not been honored when presented for payment, together with still images of the individuals who had cashed those checks. When reviewing those checks, Deputy Buck came across a check payable to Mr. Beach together with a still photograph of Mr. Beach wearing sunglasses and a hat. Deputy Buck contacted Special Agent Verzi from the Secret Service because of Special Agent Verzi's experience in cases pertaining to checks.

{¶16} Deputy Buck then arrested Mr. Beach, and Mr. Beach agreed to speak with him and Special Agent Verzi. Deputy Buck maintained at trial that, during the interview, Mr. Beach identified himself as the person in the surveillance pictures obtained from Walmart and Roush's Market. Mr. Beach identified the checks at issue, and he admitted to the deputy that he had cashed those checks. Deputy Buck recalled that, at the beginning of the interview, Mr. Beach stated that he thought that the checks were good checks. Mr. Beach informed him that he had met a man named "Robin" when he was staying at Oriana House. Robin asked Mr. Beach if he wanted to make some money cashing checks. Mr. Beach and Robin split the money received from cashing the checks.

{¶17} Special Agent Verzi testified that, when he interviewed Mr. Beach with Deputy Buck, Mr. Beach initially maintained that he thought the checks were good. Deputy Buck maintained that Mr. Beach informed the officers that, while he was staying at Oriana House, a man named Robin learned Mr. Beach needed to make some money. After Robin approached Mr. Beach about making money, Mr. Beach asked Robin how they would make money. Robin then informed Mr. Beach that they would be cashing checks. Special Agent Verzi maintained that, during the interview, Mr. Beach never mentioned doing any work for Robin, and their arrangement was only that they would split the proceeds of the checks after Mr. Beach cashed the checks. However, Mr. Beach did inform Deputy Buck and Special Agent Verzi that, after he cashed the two checks at issue, Robin told him that he was forging the checks by copying checks and using magnetic ink. The State played portions of the recorded interview during Special Agent Verzi's testimony, and the entire recording was admitted into evidence after the close of the State's case.[1]

{¶18} Mr. Beach argues that the evidence presented at trial did not prove that the AMHA check was forged. In support, he points to Ms. Benson's testimony, and he argues that Ms. Benson acknowledged that a check for construction would have come through a different department than hers, and she only compared the check to the list of payees from her department. However, this is not how we read Ms. Benson's testimony. The testimony cited by Mr. Beach was elicited on cross-examination, and does not appear to pertain to whether Ms. Benson could establish the legitimacy of the check. Instead, Ms. Benson indicated that she would not have

---

[1] This Court cannot discern from the transcript the precise portions of the recorded interview that were played during Special Agent Verzi's testimony.

knowledge of subcontractors performing work for AMHA, but the construction department would have a list of subcontractors, because the State of Ohio's procurement policies would require AMHA to have labor records for the subcontractors. However, Ms. Benson's lack of knowledge of the list of subcontractors is not determinative of the issue of whether there was sufficient evidence that the AMHA check was forged. On redirect examination, Ms. Benson indicated that AMHA would not issue checks to employees of subcontractors or contractors. However, there was no evidence that AMHA issued checks directly to subcontractors, or that such checks would have been issued by a different department. Instead, Ms. Benson had testified on direct examination that the construction department submits the paperwork for vendors to Ms. Benson's department, which issues the check. Therefore, there is no indication that Mr. Beach may have been issued a check from a different department within the AMHA. Further, the evidence of the discrepancies between the checks, and Ms. Beach's statement that AMHA did not owe any money to Mr. Beach, when viewed in a light most favorable to the State, provides sufficient evidence establishing that the AMHA check was forged.

{¶19} In addition, Mr. Beach argues that the State "failed to present any evidence that [he] knew that the checks were forged." However, this Court has held that "[b]ecause a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case." *State v. Weese*, 9th Dist. Summit No. 23897, 2008-Ohio-3103, ¶ 13. "Circumstantial evidence and direct evidence inherently possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus.

{¶20} The State's evidence provided that Mr. Beach, while wearing sunglasses and a hat, cashed these checks and split the proceeds with Robin. Mr. Beach did not indicate during his interview that he was owed any money by Robin and did not indicate that he performed any

work from which he would be entitled to this money. Viewing the evidence in the light most favorable to the State, the trial court could reasonably infer from the evidence that Mr. Beach had knowledge that the checks were probably forged. *See* former R.C. 2901.22(B) ("A person has knowledge of circumstances when [the person] is aware that such circumstances probably exist.").

{¶21} Mr. Beach further seems to argue that the trial court should have granted his Crim.R. 29 motion at the close of the State's evidence because the trial court had not yet listened to Mr. Beach's statement to the officers. However, both Deputy Buck and Special Agent Verzi testified as to the content of Mr. Beach's statements, wherein he discussed splitting one-half of the proceeds of the checks with Robin, and unspecified portions of the statement were played during Special Agent Verzi's testimony. Accordingly, we cannot say that the trial court did not have sufficient evidence before it, from which, when viewed in the light most favorable to the State, it could reasonably infer that Mr. Beach had knowledge that the checks were forged.

{¶22} Therefore, Mr. Beach's first and third assignments of error in Case No. 26021 are overruled.

## CASE NO. 26021 – ASSIGNMENT OF ERROR II

MR. BEACH'S CONVICTIONS FOR FORGERY WERE AGAINST THE WEIGHT OF THE EVIDENCE[.]

{¶23} In his third assignment of error in Case No. 26021, Mr. Beach argues that his forgery convictions were against the manifest weight of the evidence. We disagree.

{¶24} First, we note that Mr. Beach combined his arguments pertaining to his first and second assignments of error in his merit brief. *See* App.R. 12(A)(2) ("The court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief * * *.") Mr. Beach's second assignment of error challenges

the weight of the evidence. When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶25} Although Mr. Beach has set forth the legal standard pertaining to a challenge to the weight of the evidence in his brief, it appears that his arguments pertaining to the weight of the evidence rests solely upon the premise that, because the State failed to produce evidence that the AMHA check was forged or that Mr. Beach was aware that the checks were forged, then the State necessarily failed to meet its burden of persuasion.

{¶26} However, in our discussion of Mr. Beach's first and third assignments of error, we concluded that there was sufficient evidence from which the trial court could reasonably infer that the AMHA check was forged and that Mr. Beach had knowledge that the checks were forged. Mr. Beach does not challenge the credibility of witnesses, maintain that the trial court lost its way in resolving conflicts in the evidence, or otherwise develop a manifest weight argument, and we decline to construct one on his behalf. *See* App.R. 16(A)(7).

{¶27} Accordingly, Mr. Beach's second assignment of error in Case No. 26021 is overruled.

## CASE NO. 27124 – ASSIGNMENT OF ERROR III

THE TRIAL COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF RULE 11 WHEN TAKING MR. BEACH'S PLEA[.]

{¶28} In his third assignment of error in Case No. 27124, Mr. Beach argues that the trial court erred in accepting his guilty plea to obstructing justice without first complying with the requirements of Crim.R. 11. We disagree.

{¶29} To be valid, "a plea [must be] knowingly, intelligently, and voluntarily made[.]" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. Crim.R. 11(C) applies to guilty pleas entered in felony cases:

> Under this rule, the trial judge may not accept a plea of guilty * * * without addressing the defendant personally and (1) "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing," (2) informing the defendant of the effect of the specific plea and that the court may proceed with judgment and sentencing after accepting it, and ensuring that the defendant understands these facts, and (3) informing the defendant that entering a plea of guilty * * * waives the constitutional rights to a jury trial, to confrontation, to compulsory process, and to the requirement of proof of guilt beyond a reasonable doubt and determining that the defendant understands that fact.

*Clark* at ¶ 27, quoting Crim.R. 11(C)(2)(a)-(c).

{¶30} "To satisfy the requirement of informing a defendant of the effect of a plea, a trial court must inform the defendant of the appropriate language under Crim.R. 11(B)." *State v. Jones*, 116 Ohio St.3d 211, 2007-Ohio-6093, paragraph two of the syllabus. Crim.R. 11(B) provides, in relevant part that a "plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1).

{¶31} Literal compliance with Crim.R. 11 is preferred, but not necessarily required. *Clark* at ¶ 29. "If a trial court fails to literally comply with Crim.R. 11, reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *Id.* at ¶ 30. If a trial judge fails to

explain one of the constitutional rights set forth in Crim.R. 11(C)(2)(c), the defendant's plea is invalid. *Clark* at ¶ 31. Conversely, a trial court's failure to explain a nonconstitutional right triggers a substantial compliance analysis. *Id.* "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving,' the plea may be upheld." *Id.*, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). If the court fails to substantially comply with Crim.R. 11 in explaining a nonconstitutional right, "reviewing courts must determine whether the trial court partially complied or failed to comply with the rule." (Emphasis omitted.) *Clark* at ¶ 32. Partial compliance will result in a vacation of the plea only if the defendant demonstrates prejudice as a result of the partial compliance. *Id.* A complete failure to comply with the rule will result in a vacation of the plea, regardless of whether prejudice has been shown. *Id.*

{¶32} At the time that Mr. Beach changed his plea, the case had been scheduled for bench trial. The State informed the trial court that Mr. Beach intended to change his plea to guilty on the obstructing justice count, and the State moved to dismiss the having weapon under disability count. The State further reminded the trial court that it had found Mr. Beach guilty on the two forgery charges in the other case and that "sentencing was continued to today, pending the outcome of this case." Defense counsel then informed the court:

> At this time, Mr. Beach is prepared to withdraw his former plea of not guilty and enter a plea of guilty to the obstructing charge, understanding the other charge would be dismissed.

> We discussed all the constitutional rights, and he knows that he would be giving them up by entering into a plea. *And we'd ask to be heard before sentencing.*

{¶33} The trial court then engaged in the following colloquy:

THE COURT: Mr. Beach, you're charged today now with one count of obstructing justice. Because it was in a homicide investigation, that is a third degree felony with the potential of one to five years and a $10,000 fine.

Do you understand the charge, sir?

[MR. BEACH]: I do.

THE COURT: How do you wish to plead?

[MR. BEACH]: Guilty.

THE COURT: *Do you understand by entering a plea of guilty that you're giving up the right to a trial; that they are prepared to go forward. And I'm prepared to hear the case at this time.*

[MR. BEACH]: *I do.*

THE COURT: You would have the right to have them prove you guilty beyond a reasonable doubt of each element of the crime, the right to subpoena witnesses to testify for you, the right to have your lawyers cross-examine the witnesses called by the State, and the right that you would have to testify in your own defense, but no one could make you do that.

Do you understand those rights?

[MR. BEACH]: I do, ma'am.

* * *

THE COURT: Do you also understand that you're giving up any right to an appeal that you may have should your case go to trial?

[MR. BEACH]: I do.

THE COURT: And that if I would sentence you to prison, which is going to happen, that you will be subject to a discretionary period of three years of Post Release Control. And if you fail Post Release Control, up to 50 percent of your sentence would be reimposed.

[MR. BEACH]: I do, ma'am.

THE COURT: You're satisfied with [Defense Counsel's] representation of you?

[MR. BEACH]: Absolutely.

THE COURT: And you are a United States citizen?

[MR. BEACH]: Yes, ma'am.

THE COURT: Okay. Then I will find the plea as knowingly, intelligently and voluntarily given and find you guilty. * * *

(Emphasis added.)

{¶34} In addition, Mr. Beach signed a written guilty plea wherein he acknowledged that he had "been informed by [his] attorney and by the Judge of the effect of [his] guilty plea and its consequences, and [he] underst[ood] them; and, upon accepting [his] guilty plea, the Court may immediately proceed with judgment and sentencing." In the written plea, he further acknowledged that "[b]y pleading guilty, [he] admit[ted] committing the offense[]" and that he "kn[ew] the Judge may either sentence [him] today or refer [his] case for a pre-sentence report." *See State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, paragraph two of the syllabus ("An alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea.")

{¶35} Mr. Beach maintains that the trial court erred by failing to comply with Crim.R. 11 because it completely failed to advise him of the effect of a guilty plea and that it could proceed directly to sentencing. *See* Crim.R. 11(C)(2)(b). Mr. Beach concedes that his arguments implicate non-constitutional issues subject only to substantial compliance with the rule. *See Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, at ¶ 31.

{¶36} In *State v. Stoddard*, 9th Dist. Summit No. 26663, 2013-Ohio-4896, this Court reviewed a colloquy wherein the trial court notified the defendant that "there w[ould] be no further proceedings in [his] case, and [he] would be giving up any appeal rights that arise from a trial," and the defendant responded that he understood, and the defendant acknowledged that he spoke with his attorney about the evidence in the case, he spoke to his sons about his decision to plead guilty and understood that by pleading guilty he was relieving the State of its obligation to

prove his guilt beyond a reasonable doubt. *Id.* at ¶ 11. On appeal, the defendant maintained, in part, that the trial court did not comply with Crim.R. 11 because it failed to explain the effect of a guilty plea. *Id.* at ¶ 9. After review of the circumstances in that case, we concluded that the defendant's plea was knowingly, intelligently, and voluntarily made. *Id.* at ¶ 12.

{¶37} Here, it appears that the trial court in this case provided essentially the same information to Mr. Beach as the trial court did in *Stoddard*. Our review of the context and substance of the colloquy indicates that Mr. Beach subjectively understood the effect of his guilty plea and that the trial court was proceeding directly to sentencing. Accordingly, we conclude that the trial court substantially complied with the rule. *See Clark* at ¶ 31. However "even assuming that the trial court only partially complied with [the] rule, [Mr. Beach] has not demonstrated prejudice. He has not made any argument on appeal that he would not otherwise have entered his plea. Based on our review of the record, this Court concludes that [Mr. Beach] entered his guilty plea in a knowing, voluntary, and intelligent manner." *State v. Lockhart*, 9th Dist. Summit No. 26799, 2015-Ohio-856, ¶ 15.

{¶38} Mr. Beach further argues that the trial court failed to ensure that he was making the plea voluntarily. *See* Crim.R. 11(C)(2)(a)). Mr. Beach maintains that the trial court was required to inquire of Mr. Beach as to whether any threats, promises, or inducements were made prior to Mr. Beach entering his plea. Mr. Beach maintains that "[w]ithout an assessment as to whether [he] was induced or if promises were made, the Court erred in determining that [he] made his plea voluntarily and knowingly." Although trial courts may routinely and appropriately ask whether a plea was induced or promises were made in order to assist the trial courts in assessing whether the plea was voluntary, we note that the plea agreement was discussed at the

beginning of the change of plea hearing. Further, in the written guilty plea to the obstruction of justice charge, signed by Mr. Beach, it provides:

> I have been fully advised by my attorney of the Criminal Rule 11(F) plea negotiations which have also been stated in open court and I accept those negotiations as my own. I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. I am not under the influence of drugs or alcohol. No threats have been made to me. No promises have been made except as part of the plea agreement stated entirely as follows: remaining count dismissed.

*See Barker*, 2011-Ohio-4130, at paragraph two of the syllabus. Lastly, Mr. Beach has made no argument that he would not otherwise have entered his plea had the trial court specifically asked him if his plea was based upon threats, promises, or inducements. *See Lockhart*, 2015-Ohio-856, at ¶ 15

{¶39} Accordingly, Mr. Beach's third assignment of error in Case No. 27124 is overruled.

### CASE NO. 26021 – ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED MR. BEACH TO MAXIMUM TERMS FOR HIS FORGERY CONVICTIONS AND WHEN IT RAN THOSE SENTENCES CONSECUTIVELY WITH MR. BEACH'S OTHER CRIMINAL CASE[.]

### CASE NO. 27124 – ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED MR. BEACH TO A MAXIMUM TERM FOR HIS OBSTRUCTION OF JUSTICE CONVICTION AND RAN IT CONSECUTIVELY WITH [HIS] OTHER CRIMINAL CASE[.]

{¶40} In his fifth assignment of error in Case No. 26021, Mr. Beach argues that the trial court abused its discretion in sentencing him to the maximum sentence for his forgery convictions, to be served concurrently. In his second assignment of error in Case No. 27124, Mr. Beach argues that the trial court abused its discretion in sentencing him to the maximum sentence for his obstruction of justice conviction. In both of these assignments of error, Mr.

Beach argues that the trial court abused its discretion in ordering that the sentences from his two cases be served consecutively to each other.

{¶41} "A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence." *State v. Blackert*, 9th Dist. Summit Nos. 27314, 27315, 2015-Ohio-2248, ¶ 7, quoting *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 26, quoting *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 43, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. "The first step, reviewed de novo, is to ensure that the trial court complied with applicable rules and statutes in imposing the sentence." *Blackert* at ¶ 7, quoting *Bulls* at ¶ 26, quoting *Clayton* at ¶ 43. "If the first step is satisfied, the second [step] is to review the term of imprisonment for an abuse of discretion." *Blackert* at ¶ 7, quoting *Bulls* at ¶ 26, quoting *Clayton* at ¶ 43.

{¶42} At the time of Mr. Beach's sentencing, former R.C. 2929.19(B)(2)(a) and (c) provided:

> The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
>
> (a) * * * if it imposes a prison term for a felony of the fourth or fifth degree * * * its reasons for imposing the prison term, based upon the overriding purposes and principles of felony sentencing set forth in section 2929.11 of the Revised Code, and any factors listed in divisions (B)(1)(a) to (i) of section 2929.13 of the Revised Code that it found to apply relative to the offender.
>
> (c) [i]f it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]

Former R.C. 2929.13 (B)(1)(a)-(i), effective at the time of Mr. Beach's sentencing, required the trial court to determine whether any of the following applied to the matter:

> (a) In committing the offense, the offender caused physical harm to a person.
>
> (b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.

(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.

(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

(e) The offender committed the offense for hire or as part of an organized criminal activity.

(f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31, 2907.321, 2907.322, 2907.323, or 2907.34 of the Revised Code.

(g) The offender at the time of the offense was serving, or the offender previously had served, a prison term.

(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.

(i) The offender committed the offense while in possession of a firearm.

**{¶43}** Based upon these versions of the statutes, Mr. Beach argues that the trial court erred by failing to make any statement at the sentencing hearing or in the sentencing entries as to why it sentenced Mr. Beach to serve his forgery and obstruction of justice prison terms consecutively or sentenced him to the maximum terms on his convictions.

**{¶44}** However, prior to Mr. Beach's sentencing, the Ohio Supreme Court declared certain statutory sections to be unconstitutional and thus ineffective, including R.C. 2929.19(B)(2) and R.C. 2929.14(B), which required the trial court to make findings. *State v. Foster*, 109 Ohio St.3d 1, 29, 2006-Ohio-856, ¶ 97. Thereafter, the United States Supreme Court determined that "it was constitutionally permissible to require judicial fact-finding as a prerequisite for the imposition of consecutive sentences." *State v. McGowan*, 9th Dist. Summit No. 27092, 2015-Ohio-1804, ¶ 17, fn. 4, citing *Oregon v. Ice*, 555 U.S. 160 (2009). However,

the Ohio legislature did not reenact any provision requiring these findings until enacting 2011 Am.Sub.H.B. No. 86, 2011 Ohio Laws 29, effective September 30, 2011, after Mr. Beach's sentencing. *See* R.C. 2929.19(B)(2)(a) and R.C. 2929.14(C)(4) (formerly R.C. 2929.14(E)(4)); *McGowan* at ¶ 17, fn. 4; *see also State v. Kilmire*, 9th Dist. Summit Nos. 27319, 27320, 2015-Ohio-665, ¶ 16, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29.

{¶45} Therefore, at the time of Mr. Beach's sentencing, the trial court was not required to make findings or provide its reasons for running Mr. Beach's sentences consecutively or for sentencing him to the maximum terms of imprisonment on each conviction. *See State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, paragraph two of the syllabus (United States Supreme Court's decision in *Ice* did "not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional" in *Foster*.). Therefore, to the extent that Mr. Beach argues that the trial court erred by failing to make findings or state its reasons for imposing the sentences, his assignments of error are overruled.

{¶46} Mr. Beach further argues that the trial court was unreasonable when it sentenced him to the maximum terms of imprisonment on his convictions. "[W]here the trial court does not put on the record its consideration of [Sections] 2929.11 and 2929.12 [of the Ohio Revised Code], it is presumed that the trial court gave proper consideration to those statutes." *State v. Fernandez*, 9th Dist. Medina No. 13CA0054-M, 2014-Ohio-3651, ¶ 8, quoting *State v. Steidl*, 9th Dist. Medina No. 10CA0025-M, 2011-Ohio-2320, ¶ 13, quoting *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, at ¶ 18, fn. 4.

{¶47} Here, Mr. Beach argues that the sentences were unreasonable because, with respect to his obstruction of justice charge, he acted responsibly by pleading guilty once he was able to view the video statement that he made pertaining to the charge. With respect to the

forgery convictions, Mr. Beach argues that the trial court was unreasonable in sentencing him to the maximum sentences. He argues that his offenses were not egregious, as he received less than $200.00 for his involvement in each forgery offense, he never attempted to hide his identity, cashing the checks in his own name, and he spoke to and cooperated with the police after his arrest. Further, he maintains that he was never alleged to have been the "mastermind" behind the check-cashing scheme.

{¶48} However, where the trial court did not put the factors on the record at the sentencing hearing, we presume that it properly considered R.C. 2929.11 and 2929.12. *Fernandez* at ¶ 8. After review of the record, we conclude that Mr. Beach has failed to demonstrate that the trial court abused its discretion in sentencing him to twelve months of imprisonment on each of the forgery convictions, running concurrently with each other, and to five years of imprisonment on the obstruction of justice conviction, to be served consecutively to the sentence on the forgery convictions. Therefore, his fifth assignment of error in Case No. 26021, and his second assignment of error in Case No. 26124 are overruled.

### CASE NO. 26021 – ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN ASSESSING ATTORNEY FEES AND COSTS AGAINST [MR. BEACH] WITHOUT INFORMING [HIM] AT HIS SENTENCING OR MAKING AN "ABILITY-TO-PAY" FINDING AS REQUIRED UNDER [R.C.] 2947.23 AND 2941.51(D)[.]

### CASE NO. 27124 – ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ASSESSING ATTORNEY FEES AND COSTS AGAINST [MR. BEACH] WITHOUT INFORMING [HIM] AT HIS SENTENCING OR MAKING AN "ABILITY-TO-PAY" FINDING AS REQUIRED UNDER [R.C.] 2947.23 AND 2941.51(D)[.]

{¶49} In his fourth assignment of error in Case No. 26021 and his first assignment of error in Case No. 27124, Mr. Beach argues that the trial court erred in assessing him attorney

fees and costs without notifying him of this at his sentencing or finding that he had the ability to pay.

{¶50} Former R.C. 2947.23(A)(1), in effect at the time of Mr. Beach's sentencing, provided:

> In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. *At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:*
>
> (a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in compliance with the approved payment schedule.
>
> (b) If the court orders the defendant to perform the community service, the defendant will receive credit upon the judgment at the specified hourly credit rate per hour of community service performed, and each hour of community service performed will reduce the judgment by that amount.

(Emphasis added.)

{¶51} This Court has recognized that "[f]ormer R.C. 2947.23(A)(1) required trial courts to advise defendants of the foregoing community service notifications at their sentencing hearings." *State v. Eader*, 9th Dist. Summit No. 26762, 2013-Ohio-3709, ¶ 19, quoting *State v. Ibn-Ford*, 9th Dist. Summit No. 26386, 2013-Ohio-2172, ¶ 77-78. "[A] trial court's failure to comply with the community service notifications of R.C. 2947.23(A)(1)(a) & (A)(1)(b) constitutes reversible error." *Eader* at ¶ 19, quoting *State v. Ross*, 9th Dist. Summit No. 25778, 2012-Ohio-1389, ¶ 28.

{¶52} In regard to attorney fees, R.C. 2941.51(D) provides that:

> [F]ees and expenses approved by the court under [R.C. 2941.51] shall not be taxed as part of the costs and shall be paid by the county. However, if the person represented has, or reasonably may be expected to have, the means to meet some

part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay.

{¶53} "Thus, 'R.C. 2941.51(D) allows a trial court to order a defendant to pay some or all of his court-appointed attorney fees, but only after finding that the defendant is financially capable of doing so.'" *Eader* at ¶ 23, quoting *State v. El-Jones*, 9th Dist. Summit No. 26136, 2012-Ohio-4134, ¶ 37. "[W]hen the trial court fails to determine that the defendant has the ability to pay at either the sentencing hearings or in the sentencing entries but nonetheless orders the defendant to pay attorney fees, the trial court fails to comply with R.C. 2941.51(D)." *Eader* at ¶ 23, quoting *State v. Clark*, 9th Dist. Summit No. 26673, 2013-Ohio-2984, ¶ 21. "The appropriate remedy for such an error 'is a remand for "a determination of [the defendant's] financial ability to pay for his court-appointed counsel."'" *Eader* at ¶ 23, quoting *El-Jones* at ¶ 37, quoting *State v. Warner*, 9th Dist. Lorain No. 96CA006534, 2001 WL 1155698, *4 (Sept. 21, 2001)

{¶54} Here, there is no indication in the record that the trial court advised Mr. Beach of his community service notifications as required by former R.C. 2947.23. *See Eader* at ¶ 19. Further, there is no indication that the trial court assessed Mr. Beach's ability to pay for attorney fees prior to ordering him to pay those fees in the sentencing entry. *See Eader* at ¶ 23. The State concedes that the trial court erred in these respects, and, based upon the language of the former versions of these statutes, and our precedent discussed above, we agree. Accordingly, Mr. Beach's fourth assignment of error in Case No. 26021, and his first assignment of error in Case No. 27124 are sustained, and this matter is remanded for the trial court to inquire into Mr. Beach's ability to pay attorney fees and to comply with the community service notification requirements of former R.C. 2947.23(A)(1).

III.

{¶55} Accordingly, Mr. Beach's first, second, third, and fifth assignments of error in Case No. 26021, and his second and third assignments of error in Case No. 27124, are overruled. Mr. Beach's fourth assignment of error in Case No. 26021, and his first assignment of error in Case No. 27214, are sustained. The judgment of the trial court is affirmed in part, and reversed in part, and this cause is remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ANDREA L. WHITAKER and WILLIAM T. WHITAKER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.