[Cite as *State v. Bulls*, 2015-Ohio-276.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

DWAYNE M. BULLS

    Appellant

C.A. No.     27029

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 12 12 3518

DECISION AND JOURNAL ENTRY

Dated: January 28, 2015

MOORE, Judge.

{¶1} Defendant-Appellant, Dwayne Bulls, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In October 2012, T.H. told her mother that her step-father, Mr. Bulls, had raped her the previous year. T.H. was eleven at the time of the alleged rape and, shortly after reporting the rape to her mother, was diagnosed with chlamydia.

{¶3} A grand jury indicted Mr. Bulls on two counts of rape, in violation of R.C. 2907.02(A)(1)(b). The first count alleged rape strictly by virtue of the victim being less than 13 years of age while the second count included the additional element that Mr. Bulls had used force or the threat of force against the minor victim. The matter proceeded to a jury trial, and the jury found that Mr. Bulls had purposely compelled the minor victim to submit by force or threat of force. Consequently, the jury found Mr. Bulls guilty of the second count of rape. The State

dismissed the first count, and the matter proceeded to sentencing. The trial court sentenced Mr. Bulls to life in prison with the possibility of parole after 25 years and classified him as a Tier III sex offender.

{¶4} Mr. Bulls now appeals from his conviction and raises three assignments of error for our review. For ease of analysis, we consolidate two of the assignments of error.

II.

## ASSIGNMENT OF ERROR I

[MR. BULLS'] CONVICTION FOR RAPE IS UNCONSTITUTIONAL AS THEY ARE (sic) AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT DENIED [MR. BULLS'] MOTION FOR ACQUITTAL.

{¶5} In his first and second assignments of error, Mr. Bulls argues that his rape conviction is based on insufficient evidence and that the trial court erred by denying his Crim.R. 29 motion for acquittal. Additionally, he argues that his conviction is against the manifest weight of the evidence. We disagree.

{¶6} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J.

concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶7} "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). Sexual conduct includes anal intercourse, and "[p]enetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A). Whoever commits the foregoing offense is guilty of rape. R.C. 2907.02(B).

{¶8} T.H. testified that she was born in November 1999. In October 2011, she was living at home with her sister, her two brothers, her mother, and Mr. Bulls, her step-father. T.H. testified that, one October evening, Mr. Bulls told her to come out to the garage behind her house. At the time, T.H.'s mother was at work and her several of her siblings were in the house. T.H. testified that Mr. Bulls often worked on cars out in the garage, so it was not unusual for him to ask her or one of her siblings for help. Accordingly, she walked out to the garage and entered it through the man door, ahead of Mr. Bulls.

{¶9} T.H. stated that Mr. Bulls pulled the man door closed behind them. The two garage doors were already closed and, after the two entered, Mr. Bulls turned off the lights. T.H.

testified that Mr. Bulls told her to get down on the couch that was located in the garage, but she refused to do so. At that point, Mr. Bulls pushed her onto the couch and ordered her to get undressed. When she again said no, Mr. Bulls held her face down with one hand while he used the other to pull down her shorts. T.H. described how Mr. Bulls situated himself between her legs and pulled down his pants. She testified that Mr. Bulls then "put it in [her]." When asked what "it" was, T.H. said that "it" was Mr. Bulls' "private part." When asked what part of her body she meant when she said Mr. Bulls put his private part "in [her]," T.H. stated: "Like my butt." In response to a question about what she "do[es] with [her] butt," T.H. responded: "Do out of it."

{¶10} T.H. testified that she was crying and trying to move around while Mr. Bulls was moving on top of her. Eventually, Mr. Bulls stopped and let her up. T.H. then went in the house and cried by herself in her room until she eventually went to bed. She did not tell her mother about the incident until October 2012. After T.H. told her mother that Mr. Bulls had raped her, her mother took her to the CARE Center at Akron Children's Hospital.

{¶11} Colleen Shrout, a social worker in the CARE Center, interviewed T.H. as part of the evaluation T.H. received at Akron Children's. The State played the recording of Ms. Shrout's interview with T.H. for the jury. During the interview, T.H. denied being sexually active, but told Ms. Shrout that Mr. Bulls had raped her and described the incident, consistent with her testimony at trial. When Ms. Shrout asked T.H. whether anything went "inside [her] butt" during the sexual assault, T.H. said yes. Ms. Shrout then asked T.H. what went "inside [her] butt," and T.H. said she felt Mr. Bulls' "private" in her butt. She also said that she experienced pain in her butt and her stomach the day after Mr. Bulls assaulted her.

{¶12} Nurse Practitioner Donna Abbott testified that she gave T.H. a physical examination when her mother brought her to the CARE Center. Nurse Abbott did not document any significant findings as the result of the exam, but noted that it is not uncommon for sexual assault victims to either not display any signs of injury or to heal quickly. As part of her examination, she tested T.H. for any sexually transmitted diseases. Nurse Abbott testified that T.H. tested positive for chlamydia and that chlamydia can only be contracted through sexual activity. As such, Nurse Abbott opined that, in her professional opinion, T.H. was the victim of sexual abuse.

{¶13} Dr. Marguerite Erme, the Medial Director of Akron Public Health, testified as an expert in the area of sexually transmitted diseases. Dr. Erme testified that chlamydia is a germ similar to bacteria and can only be contracted through sexual activity. She defined sexual activity as "any activity where sexual organs from one person may come in contact with sexual organs of another -- or the mouth or the anus of another person." Dr. Erme stated that untreated chlamydia can be present in a person for up to two years and that the person may not display any physical symptoms. Moreover, people who receive treatment for chlamydia can become reinfected if they engage in sexual activity with an infected person after they complete their course of antibiotics. She testified that, when patients are told they have chlamydia and receive treatment, the general practice of treating physicians is to explain to the person that they contracted the disease through unprotected sexual activity. Dr. Erme reviewed Mr. Bulls' treatment records and confirmed that he was treated for chlamydia in February 2011.

{¶14} Mr. Bulls argues that his rape conviction is based on insufficient evidence because the State failed to prove the element of sexual conduct. He argues that there was no evidence of any actual penetration because the prosecutor never asked T.H. to elaborate when

she said that the body part affected by Mr. Bulls' actions was her butt. According to Mr. Bulls, "[i]t is possible that the penis only made contact with the buttocks * * * and did not actually penetrate * * *."

{¶15} As previously noted, "[p]enetration, however slight, is sufficient to complete * * * anal intercourse." R.C. 2907.01(A). T.H. did not testify that Mr. Bulls placed his penis *on* her buttocks. Rather, her testimony was that he placed his penis *in* her. When asked where inside her Mr. Bulls placed his penis, T.H. stated: "Like my butt." She specified that a butt is the part of the body that you "[d]o out of." Moreover, T.H. told Ms. Shrout that she experienced pain in her butt and stomach the day after Mr. Bulls assaulted her. Had Mr. Bulls placed his penis on T.H.'s buttocks, his doing so would not have caused her any physical pain. A rational trier of fact could have found that the reason T.H. experienced pain was that Mr. Bulls had actually penetrated her anally.

{¶16} T.H. also tested positive for chlamydia, which requires a sex organ to come into contact with a person's mouth, sex organ, or anus. There was testimony that untreated chlamydia can survive in a person's body for up to two years, and, other than the incident that occurred between her and Mr. Bulls, T.H. denied being sexually active. Viewing the evidence in a light most favorable to the State, we must conclude that the State set forth sufficient evidence from which a rational trier of fact could have concluded that Mr. Bulls engaged in anal intercourse with T.H. Because anal intercourse is a form of sexual conduct, *id.*, Mr. Bulls' argument that the State failed to prove the element of sexual conduct lacks merit. We next consider whether Mr. Bulls' conviction is against the weight of the evidence.

{¶17} When a defendant asserts that his conviction is against the manifest weight of the evidence:

[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Winchester*, 9th Dist. Summit No. 26652, 2013-Ohio-4683, ¶ 4.

{¶18} Mr. Bulls argues that his conviction is against the manifest weight of the evidence because there was no physical evidence that he raped T.H., T.H. failed to disclose the incident for a year, and T.H.'s own mother described her as a "compulsive liar." He argues that the jury lost its way when it found T.H. to be a credible witness.

{¶19} There was testimony at trial that T.H. lied to her mother on several occasions, including two particular instances involving the cell phone that T.H. and her siblings used. T.H.'s mother testified that, in early 2011, she discovered that the cell phone she allowed her children to share had been used to send a picture of T.H.'s naked midriff to a boy's cell phone. She testified that she confronted T.H. about the picture, but T.H. denied having sent it. She nonetheless punished T.H. because she believed her to be lying about the picture. T.H.'s mother testified that T.H. later admitted to sending the picture because her schoolmates had accused her of being homosexual and she thought sending the picture would refute their accusations.

{¶20} T.H.'s mother also testified that, in September 2012, T.H. caused a 35 year-old man to knock on several doors of their street looking for T.H. There was testimony that T.H. used a pre-installed messaging application on her shared cell phone to begin chatting with a stranger and later told the stranger the name of her street. T.H. initially denied having anything

to do with the incident, but admitted her role after the police came to her school. T.H.'s mother testified that she issued T.H. a strict punishment for her behavior, but waited a few weeks to discuss the matter with her. In the midst of asking T.H. to explain her behavior, T.H. told her mother that Mr. Bulls had raped her.

{¶21} T.H. testified that she did not initially tell her mother about the rape because she was afraid her mother would be angry with her and, at that point, Mr. Bulls was still living in the house. There was testimony that Mr. Bulls left T.H.'s house in January 2012 and never returned. T.H. testified that part of the reason she told her mother about the rape in October 2012 was because she knew Mr. Bulls was "gone for good." She also testified that, while she sometimes lied to try to avoid getting into trouble, she told her mother about the rape at a point in time when she was already in trouble.

{¶22} Detective Larry Brown testified that he was assigned to T.H.'s case in November 2012 and arranged for T.H. to make several recorded phone calls to Mr. Bulls that same month. Detective Brown testified that he was aware that Mr. Bulls had had chlamydia in the past because T.H.'s mother told him that she had contracted the disease from Mr. Bulls. Accordingly, Detective Brown told T.H. to ask Mr. Bulls about chlamydia during their phone conversation and tell him that she had been diagnosed with the disease. The State played the recordings of T.H.'s phone conversations with Mr. Bulls for the jury. During their conversation, Mr. Bulls repeatedly told T.H. that it was possible to contract chlamydia from the dye in clothing and washcloths. He also denied ever having had chlamydia. When T.H. repeatedly mentioned "that time in the garage" to Mr. Bulls and later specifically told him that he was going to "get in trouble for having sex with me," Mr. Bulls brushed aside her statements and told her to take her antibiotics.

While Mr. Bulls never admitted that he had sex with T.H., he did not deny or react to her accusations that he had engaged in sex with her.

{¶23} Detective Brown testified that the police eventually arrested Mr. Bulls at his residence in Pennsylvania. On the ride back to Ohio, Mr. Bulls admitted that he had sexually transmitted diseases in 2007, 2008, and 2009, but denied ever having chlamydia. When Detective Brown told Mr. Bulls that they had obtained his medical records and knew that he had tested positive for chlamydia in February 2011, Mr. Bulls stated that he thought it was gonorrhea. He also claimed to have "blocked [] out" the portions of his phone conversation with T.H. where she accused him of having sex with her.

{¶24} Having reviewed the record, we cannot conclude that the jury lost its way when it convicted Mr. Bulls of rape. The jury heard testimony that T.H. lied to her mother on several occasions to avoid getting into trouble, but was already in trouble when she told her mother about the rape. T.H. also explained why she chose to wait almost a year to tell her mother. Moreover, there was testimony that T.H. tested positive for chlamydia, and Mr. Bulls had a history of sexually transmitted diseases, including a recent bout of chlamydia. The jury heard the phone calls between T.H. and Mr. Bulls and was in the best position to view the witnesses and assess their credibility. "It is well-settled that the [trier of fact] is 'free to believe all, part, or none of the testimony of each witness.'" *State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 40, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's witnesses rather than [Mr. Bulls]." *State v. Klein*, 9th Dist. Summit No. 26573, 2013-Ohio-3514, ¶ 12. After a thorough review of the record, we cannot conclude that this is the exceptional case where the jury lost its way in convicting Mr. Bulls. *See*

*Otten*, 33 Ohio App.3d at 340. Therefore, Mr. Bulls' argument that his conviction is against the manifest weight of the evidence lacks merit. His first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT VIOLATED [MR. BULLS'] RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION 10 OF THE OHIO CONSTITUTION AND SECTION 2907.02(B) OF THE OHIO REVISED CODE WHEN IT SENTENCED [MR. BULLS] TO A LIFE SENTENCE ABSENT REQUISITE FINDINGS BY THE JURY AS TO [MR. BULLS'] AGE AT THE TIME OF THE OFFENSE.

{¶25} In his third assignment of error, Mr. Bulls argues that the trial court erred by sentencing him to 25 years to life in prison. We do not agree.

{¶26} "A plurality of the Supreme Court of Ohio held that appellate courts should implement a two-step process when reviewing a felony sentence." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 43, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶ 26. "The first step, reviewed de novo, is to ensure that the trial court complied with applicable rules and statutes in imposing the sentence." *Id.* "If the first step is satisfied, the second [step] is to review the term of imprisonment for an abuse of discretion." *Id.* Because the issue involved herein is strictly a matter of statutory interpretation, we review Mr. Bulls' argument de novo. *See State v. Shaffer*, 9th Dist. Medina Nos. 12CA0071-M & 12CA0077-M, 2014-Ohio-2461, ¶ 7.

{¶27} Mr. Bulls argues that the only way the trial court could sentence him to 25 years to life in prison was if the trier of fact made certain additional findings under R.C. 2907.02(B), including that he was under 16 years of age at the time of his offense. "If a defendant is found guilty of violating Section 2907.02(A)(1)(b), [however,] twenty-five years to life is the *minimum*

prison sentence that he can receive, unless he was under the age of 16 at the time of the offense." (Emphasis added.) *State v. Randles*, 9th Dist. Summit No. 26629, 2013-Ohio-4681, ¶ 9. R.C. 2907.02(B) provides that, "[e]xcept as otherwise provided in this division, * * * an offender under division (A)(1)(b) of this section shall be sentenced to a prison term or term of life imprisonment pursuant to [R.C.] 2971.03 * * *." Because none of the other sentencing options set forth in R.C. 2907.02(B) applied to Mr. Bulls, the court was obligated to sentence him in accordance with R.C. 2971.03. That statute requires a trial court to impose "a minimum term of twenty-five years and a maximum of life imprisonment" upon an offender who 1) commits a violation of R.C. 2907.02(A)(1)(b), and 2) does so by purposely compelling his or her victim to submit by force or threat of force. R.C. 2971.03(B)(1)(c). The jury found that Mr. Bulls violated R.C. 2907.02(A)(1)(b) and, in doing so, compelled T.H. to submit by force or the threat of force. Consequently, the trial court did not err by sentencing Mr. Bulls to 25 years to life in prison. *See id.* Mr. Bulls' third assignment of error is overruled.

### III.

{¶28} Mr. Bulls' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

ADAM VAN HO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.