[Cite as *State v. Gregory*, 2015-Ohio-4901.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     27523 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID A. GREGORY, JR. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.     CR 2014 03 0851 |

DECISION AND JOURNAL ENTRY

Dated: November 25, 2015

MOORE, Judge.

{¶1} Defendant-Appellant David A. Gregory, Jr. appeals from his convictions in the Summit County Court of Common Pleas. We affirm.

I.

{¶2} In March 2014, Mr. Gregory was indicted on one count of illegal assembly or possession of chemicals (lithium batteries) for the manufacture of drugs (methamphetamine) in violation of R.C. 2925.041(A). Because the indictment alleged that Mr. Gregory committed the offense in the vicinity of Barberton High School, the offense was elevated to a second-degree felony. *See* R.C. 2925.041(C). Additionally, it was alleged that Mr. Gregory had previously been convicted of violating R.C. 2925.041(A), 2919.22(B)(6), or 2925.04(A); thus, increasing the potential penalty associated with the offense. *See* R.C. 2925.041(C)(2). A forfeiture specification accompanied the illegal assembly charge. Count two alleged that Mr. Gregory violated R.C. 2925.55(B) and 2923.02, the statutes which together prohibit the attempted

purchase of more than nine grams of pseudoephedrine products in a 30-day period. A supplemental indictment was subsequently filed, charging Mr. Gregory with one count of the intimidation of a crime victim or witness.

{¶3} The matter proceeded to a jury trial, after which, the jury found Mr. Gregory guilty of count one, involving the illegal assembly or possession of chemical for the manufacture of drugs, and count two, involving the attempted possession of prohibited amounts of pseudoephedrine products. The jury found him not guilty of the intimidation of a crime victim or witness. The trial court sentenced Mr. Gregory to an aggregate term of five years in prison.

{¶4} Mr. Gregory has appealed, raising four assignments of error for our review, which will be addressed out of sequence to facilitate our review.

II.

### ASSIGNMENT OF ERROR II

[MR.] GREGORY'S ILLEGAL ASSEMBLY OF CHEMICALS CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, WHICH VIOLATED [MR.] GREGORY'S RIGHTS UNDER THE 14TH AMENDMENT AND MANDATES REVERSAL.

{¶5} Mr. Gregory argues in his second assignment of error that his conviction for illegal assembly or possession of chemicals for the manufacture of drugs was based upon insufficient evidence. Specifically, he maintains that the element of "in the vicinity of a school" required that the State establish that Mr. Gregory was reckless with respect to whether, in committing the offense, he was "in the vicinity of a school." In light of Mr. Gregory's limited argument, and because we conclude that Mr. Gregory's mental state was irrelevant in determining whether he committed the offense "in the vicinity of a school[,]" we overrule his assignment of error.

{¶6} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} Mr. Gregory only challenges his conviction for violating R.C. 2925.041(A), (C), and only does so on a limited basis.

{¶8} R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C. 2925.041(C) indicates that, "[i]f the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree[.]"

{¶9} R.C. 2925.01(P) provides that:

> An offense is "committed in the vicinity of a school" if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises, *regardless of whether the offender knows the offense is being committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises.*

(Emphasis added.)

{¶10} Mr. Gregory does not dispute that he was within 1000 feet of the boundaries of any school premises; instead, he argues that he must have been reckless about being in the vicinity of the school.

**{¶11}** "[R]ecklessness is the catchall culpable mental state for criminal statutes that fail to mention any degree of culpability, except for strict liability statutes, where the accused's mental state is irrelevant. However, for strict liability to be the mental standard, the statute must plainly indicate a purpose to impose it." *State v. Lozier,* 101 Ohio St.3d 161, 2004-Ohio-732, ¶ 21. In *Lozier,* the Ohio Supreme Court concluded that language very similar to that in current R.C. 2925.01(P), indicated that the General Assembly intended to impose strict liability with respect to crimes committed "in the vicinity of a juvenile," as defined in R.C. 2925.01(BB). R.C. 2925.01(BB) provides that:

> An offense is "committed in the vicinity of a juvenile" if the offender commits the offense within one hundred feet of a juvenile or within the view of a juvenile, *regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense.*

(Emphasis added.)

**{¶12}** Given that very similar phrasing is used in the current version of R.C. 2925.01(P), we conclude that the General Assembly plainly intended to impose strict liability for a violation R.C. 2925.041(A) committed in the vicinity of a school. *See Lozier* at ¶ 21, 36.

**{¶13}** It is true that, the Supreme Court in *Lozier*, in evaluating a former version of R.C. 2925.01(P), concluded that the General Assembly *did not* intend to impose strict liability for selling LSD in the vicinity of a school. However, the version of R.C. 2925.01(P) in effect at the time only provided that, "[a]n offense is 'committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises." *See Lozier* at ¶ 38. Shortly after *Lozier* was decided, the General Assembly amended R.C. 2925.01(P) to include the language, "regardless of whether the offender knows the offense is being committed on school premises, in a school building, or

within one thousand feet of the boundaries of any school premises[,]" thus, altering the offense to a strict liability offense. *See* R.C. 2925.01(P); *see also State v. Horner,* 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 64, fn. 2 (Lanzinger, J., concurring in part and dissenting in part) ("R.C. 2925.01(P) was amended shortly after *Lozier* was decided to add language similar to that in division (BB), making it explicit that the offender need not be aware that he is near a school to be guilty of the offense."); *State v. Stigall,* 6th Dist. Lucas No. L-14-1053, 2015-Ohio-137, ¶ 12. Thus, the State was not required to demonstrate that Mr. Gregory was reckless with respect to whether he was within 1000 feet of the boundaries of any school premises.

{¶14} Given that Mr. Gregory's assignment of error is based solely on the argument that the State was required to prove recklessness, we overrule his argument on that basis. Mr. Gregory's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

[MR.] GREGORY'S ILLEGAL ASSEMBLY OF CHEMICALS CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND MUST BE REVERSED.

{¶15} Mr. Gregory asserts in his third assignment of error that his conviction for the illegal assembly or possession of chemicals for the manufacture of drugs is against the manifest weight of the evidence. We do not agree.

{¶16} When a defendant asserts that his conviction is against the manifest weight of the evidence:

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶17} Mr. Gregory again only challenges his conviction for illegal assembly or possession of chemicals to manufacture drugs. He first argues that the State was required to prove that he was reckless with respect to whether he was in the vicinity of a school. We have previously resolved that issue above. In addition, Mr. Gregory asserts that Frank Boychi's testimony was not credible, and because of that, his conviction is against the manifest weight of the evidence.

{¶18} R.C. 2925.041(A) states that, "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." "The assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section." R.C. 2925.041(B). Methamphetamine is a schedule II controlled substance. *See* R.C. 2925.01(A); R.C. 3719.01(C), (BB); R.C. 3719.41. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). R.C. 2925.041(C) elevates the offense to a second-degree felony if the offense is committed in the vicinity of a school.

{¶19} On January 21, 2014, Detective Paul Laurella of the Barberton Police Department Narcotics Division was conducting surveillance on Mr. Gregory's house for suspected drug activity. Detective Laurella was undercover and was observing events from a business across the street from Mr. Gregory's house. Detective Laurella observed Mr. Gregory exit the house with a full Save-A-Lot grocery bag, which he placed in the car in the front passenger seat. Mr. Gregory

went back into the house and came back out carrying a box that he put in backseat of the vehicle. At the same time, Detective Laurella noticed a woman leave the house, get into a black car, leave, drive a short distance away, return to Mr. Gregory's house, sit in the car for a short time, and then leave again. Detective Laurella testified that, in his experience, such behavior was consistent with the behavior of someone involved in the drug trade, who was checking to see whether the police were around in the area.

{¶20} Mr. Gregory left and Detective Laurella followed him in an unmarked car. Detective Laurella alerted Officer Ben Hill, who was a uniformed patrol officer in a marked car, of the activities in case Detective Laurella would need assistance. Mr. Gregory drove past Barberton High School and ultimately stopped at 479 Glenn Street.

{¶21} Mr. Boychi testified to the events at 479 Glenn Street. Mr. Boychi had known Mr. Gregory for many years, and had been living at Mr. Gregory's house at the time of the events at issue. According to Mr. Boychi, earlier that day, he and his friends Keith and Jennifer Penrod left Mr. Gregory's house and dropped Ms. Penrod off at an Akron court. Mr. Boychi and Mr. Penrod then went and stole approximately 50 to 60 packs of lithium batteries before picking up Ms. Penrod and driving to 479 Glenn Street. Mr. Boychi claimed that he stole the batteries to give them to Mr. Gregory in exchange for paying off a debt Mr. Boychi owed Mr. Gregory and to purchase more methamphetamine; Mr. Boychi was a methamphetamine addict.

{¶22} When the group arrived at 479 Glenn Street, Mr. Gregory was already there. Mr. Boychi went into the house with the Save-A-Lot bag of batteries and told Mr. Gregory that he had the batteries and that Mr. Gregory should take care of Mr. Boychi's debt. In addition, Mr. Boychi claimed that Mr. Gregory gave him a little over a gram of methamphetamine. According to Mr. Boychi, he, Mr. Gregory, and Ms. Penrod then got in Mr. Gregory's wife's car to go back

to Mr. Gregory's house. Mr. Gregory drove, Ms. Penrod sat in the front passenger seat, and Mr. Boychi sat in the back, on the passenger side of the vehicle. Mr. Boychi brought with him the Save-A-Lot bag containing the batteries and some other items not related to the charges.

{¶23} Detective Laurella recognized one of the people who arrived at 479 Glenn Street as Mr. Boychi, whom Detective Laurella discovered had outstanding arrest warrants. Detective Laurella alerted Officer Hill and Officer Hill initiated a traffic stop of the vehicle approximately five feet from the grounds of Barberton High School.

{¶24} Officer Hill informed Mr. Boychi of the warrants, arrested him, and placed him the back of the police cruiser. Officer Hill searched the immediate area around Mr. Boychi and found multiple packs of lithium batteries in a box on the back seat. Mr. Boychi testified that he told officers that the batteries were not his and that they were Mr. Gregory's. Officer Hill stated that from his training, he "kn[e]w that lithium batteries [were] used in the process of manufacturing methamphetamine." He indicated that, typically those manufacturing methamphetamine use three to four batteries in a batch, so, when he found so many batteries, to him, that indicated it was a large scale methamphetamine operation. He had "never personally seen th[at] many batteries at one time."

{¶25} Because he was concerned about the possibility of there being other chemicals related to the manufacture of methamphetamine in the car, he contacted Detective Laurella and asked him to participate in the stop. Detective Laurella thereafter continued the search. Inside the box, he found an empty potato chip bag full of batteries. At trial, Mr. Boychi denied bringing the box or putting anything in the box in the backseat. On the floor of the back seat Detective Laurella found a Save-a-Lot grocery bag that contained batteries. In total, 26 or 27 packs of batteries were found in the car. Detective Laurella testified that the lithium metal in lithium

batteries is a required ingredient in the one-pot method of making methamphetamine. He also testified that in all the methamphetamine labs he had investigated in the past, he had never seen that many lithium batteries in one place as the amount found in the car. Additionally, Detective Laurella found a small amount of methamphetamine on the floor of the backseat on the passenger side. At trial, Mr. Boychi admitted that the methamphetamine found in the car was his. No other chemicals used in the manufacture of methamphetamine were found in the car. There was another Save-a-Lot grocery bag found on the floor of the front passenger seat, but that bag only contained Ms. Penrod's personal possessions. Ms. Penrod and Mr. Gregory were searched and no items used in the manufacture of methamphetamine were found on their person. Ms. Penrod and Mr. Gregory were allowed to leave and Mr. Gregory was not arrested until later.

{¶26} Detective Laurella testified that after searching NPLEx, which allows law enforcement officers to determine how much and how frequently someone has purchased pseudoephedrine products, he found that Mr. Gregory had, on more than one occasion, attempted to purchase more than the amount of pseudoephedrine products authorized by law in a 30-day period and was blocked from doing so. Detective Laurella indicated that pseudoephedrine is also an essential ingredient in the one-pot method of manufacturing methamphetamine.

{¶27} Given all of the circumstances, including the presence of methamphetamine in the car, the fact the Mr. Gregory tried to purchase more pseudoephedrine than authorized by law, and the number of batteries found in the car, Detective Laurella believed that the batteries were going to be used in the manufacture of methamphetamine.

{¶28} Detective Laurella testified that when Mr. Boychi originally spoke to the police, he told the officers that Mr. Gregory bought the batteries from "Penrod." Additionally, Mr. Boychi originally told the police that the methamphetamine found in the car was Ms. Penrod's,

not his. Mr. Boychi testified that he pleaded guilty to a violation of R.C. 2925.041(A) that was a reduced charge and to possession of the methamphetamine, but indicated there were no promises made with respect to what sentence he would receive.

{¶29} On appeal, Mr. Gregory asserts that Mr. Boychi's testimony was not credible, and, thus, the jury lost its way in convicting him of violating R.C. 2925.041.

{¶30} After a thorough and independent review of the record, we cannot say the jury lost its way in finding Mr. Gregory guilty of violating R.C. 2925.041. The jury was able to hear the testimony of Mr. Boychi and view his demeanor. The jury was aware of Mr. Boychi's involvement in the crimes and the trial court instructed the jury that if it found Mr. Boychi to be an accomplice it should view his testimony with grave suspicion. Additionally, the jury was instructed on complicity. While there were inconsistencies in the version of events that Mr. Boychi originally told the police and the one he testified to at trial, we cannot say that the jury's resolution of credibility issues amounted to a manifest miscarriage of justice. We remain mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 17. Given the evidence, it was not unreasonable for the trier of fact to conclude that Mr. Gregory knowingly possessed the lithium batteries with the intent to manufacture methamphetamine, and that he did so in the vicinity of a school. *See* R.C. 2925.041(A), (C). We overrule Mr. Gregory's third assignment of error.

## ASSIGNMENT OF ERROR I

R.C. 2925.041(C) IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO [MR.] GREGORY, MANDATING REVERSAL OF HIS ILLEGAL ASSEMBLY OF CHEMICALS CONVICTION.

**{¶31}** Mr. Gregory argues in his first assignment of error that R.C. 2925.041(C) is unconstitutionally vague as applied to him. While he did not raise this issue below, he maintains that the error rises to the level of plain error.

**{¶32}** "The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it." *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2. "[W]e require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *Id.* at ¶ 16. "In addition, * * * a forfeited constitutional challenge to a statute is subject to review where the rights and interests involved may warrant it." (Internal quotations and citations omitted.) *Id.*

**{¶33}** "Under the vagueness doctrine, statutes which do not fairly inform a person of what is prohibited will be found unconstitutional as violative of due process." *State v. Carrick,* 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 14, quoting *State v. Reeder*, 18 Ohio St.3d 25, 26, (1985); *see also Johnson v. United States,* __ U.S. __, 135 S.Ct. 2551, 2556 (2015). "However, [i]mpossible standards of specificity are not required. * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." (Internal quotations and citations omitted.) *Carrick* at ¶ 14. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *In re D.B.,* 129 Ohio St.3d 104, 2011-Ohio-2671, ¶ 22. "In an as-applied challenge, the challenger contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional." (Internal quotations and citations omitted.)

*Carrick* at ¶ 16. "Thus, an as-applied challenge focuses on the particular application of the statute." *Id.*

**{¶34}** The details of Mr. Gregory's argument are somewhat difficult to follow. Overall, he is asserting that the phrase in R.C. 2925.041(C), "in the vicinity of a school," which elevates the crime to a second-degree felony, is vague as applied to him. We do not agree that Mr. Gregory has demonstrated plain error.

**{¶35}** R.C. 2925.041(A) provides that, "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C. 2925.041(B) states, that "[t]he assembly or possession of a single chemical that may be used in the manufacture of a controlled substance in schedule I or II, with the intent to manufacture a controlled substance in either schedule, is sufficient to violate this section." R.C. 2925.041(C) instructs, in relevant part, that, "[i]f the offense was committed in the vicinity of a juvenile or in the vicinity of a school, illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree[.]" R.C. 2925.01(P) states that, "[a]n offense is 'committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises." Additionally, R.C. 2925.01 defines school, school premises, and school building. *See* R.C. 2925.01(Q), (R), (S).

**{¶36}** Here, there was evidence that Mr. Gregory drove a vehicle containing 26 or 27 packs of lithium batteries, a required ingredient in the one-pot method of making

methamphetamine, directly past Barberton High School. There was also sufficient evidence that would allow one to infer that he intended to use the batteries to manufacture methamphetamine. Further, there was testimony that Mr. Gregory was stopped within five feet from property belonging to Barberton High School. A person of ordinary intelligence would understand that R.C. 2925.041(C) proscribes Mr. Gregory's conduct. *See Columbus v. Kim,* 118 Ohio St.3d 93, 2008-Ohio-1817, ¶ 10-11. Accordingly, Mr. Gregory has not convinced us that the statue is void for vagueness as applied to him.

**{¶37}** Mr. Gregory contends that the rule of lenity supports his argument. However, he fails to explain precisely how the rule of lenity is pertinent. "The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous." (Internal quotations and citations omitted.) *State v. Davis,* 139 Ohio St.3d 122, 2014-Ohio-1615, ¶ 35. "The rule applies only to the construction of ambiguous statutes." (Internal quotations and citations omitted.) *Id.* Mr. Gregory has failed to explain how the statutes involved are ambiguous; thus, we fail to see how the rule of lenity applies to his situation. *See* App.R. 16(A)(7).

**{¶38}** Mr. Gregory also argues that the legislative intent of the statute was to punish only acts "being committed in a fixed location, chosen by the perpetrator[;]" not acts committed by a person "in motion, driving on the public highways." "To determine legislative intent, a court must first consider the words used in a statute. When a statute's language is clear and unambiguous, a court must apply it as written. Further construction is required only when a statute is unclear and ambiguous." (Internal citations omitted.) *State v. Pariag,* 137 Ohio St.3d

81, 2013-Ohio-4010, ¶ 10. Again, Mr. Gregory has not explained how the statues are ambiguous, and we decline to develop his argument further. *See* App.R. 16(A)(7).

{¶39} Finally, Mr. Gregory contends that he was only found guilty of the enhancement because police chose to stop his car in front of the school. It appears that Mr. Gregory argues that the statute is subject to arbitrary enforcement, as according to Mr. Gregory, the police can determine whether Mr. Gregory would be subject to a penalty enhancement by deciding where to stop him. While it is true that the police stopped Mr. Gregory's vehicle when he was within five feet of the school grounds, it was Mr. Gregory who decided to drive past the school with the batteries he intended to use to manufacture methamphetamine. There is nothing in the record that suggests the police interfered with Mr. Gregory's intended route and caused him to drive past the school. The crime at issue lies not in being stopped by the police in the vicinity of the school, it lies in committing the offense, i.e. possessing the chemical or chemicals, in the vicinity of the school, with the intent to manufacture a controlled substance. *See* R.C. 2925.041(A), (C). Accordingly, it was Mr. Gregory's act of possessing batteries with the intention of manufacturing methamphetamine in a car that he drove past a school that caused him to be found guilty of violating the statue. Mr. Gregory has not met his burden of demonstrating plain error.

{¶40} Mr. Gregory's first assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

[MR.] GREGORY'S RIGHTS TO A FAIR TRIAL AND DUE PROCESS UNDER THE FEDERAL AND OHIO CONSTITUTIONS AS ENUMERATED IN *BRADY V. MARYLAND* WERE VIOLATED WHEN THE STATE WITHHELD POTENTIALLY EXCULPATORY EVIDENCE FROM [MR.] GREGORY'S COUNSEL, MERITING REVERSAL OF [MR.] GREGORY'S CONVICTIONS.

**{¶41}** Mr. Gregory asserts in his fourth assignment of error that he was denied his right to a fair trial because the State withheld potentially exculpatory evidence from Mr. Gregory's counsel in violation of *Brady v. Maryland,* 373 U.S. 83 (1963). We do not agree.

**{¶42}** "The prosecutor must * * * provide defendants any evidence that is favorable to them whenever that evidence is material either to their guilt or punishment." *State v. Pickens,* 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 96, citing *Brady* at 87. "Evidence is considered material when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal quotations and citation omitted.) *Pickens* at ¶ 96.

**{¶43}** "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose. Delay only violates *Brady* when the delay itself causes prejudice." (Internal citation and quotations omitted.) *State v. Osie,* 140 Ohio St.3d 131, 2014-Ohio-2966, ¶ 155. "[T]he philosophical underpinnings of *Brady* support the conclusion that even disclosure of potentially exculpatory evidence during trial may constitute a due process violation if the late timing of the disclosure significantly impairs the fairness of the trial." (Internal quotations omitted.) *Pickens* at ¶101, quoting *State v. Iacona,* 93 Ohio St.3d 83, 100 (2001). "Even where information may be exculpatory, "'[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial.'" *Pickens* at ¶ 101, quoting *Iacona* at 110, quoting *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 532 (4th Cir.1985). "The defendant has the burden to prove a *Brady* violation rising to the level of a due-process violation." *Pickens* at ¶ 102.

{¶44} Mr. Gregory claims that the State failed to disclose, until after Mr. Boychi testified at trial, a police report dated January 22, 2014, which allegedly contained a statement by Mr. Boychi to the police. He asserts that the report "went directly to [Mr. Boychi's] credibility." As an initial matter, we note that it is not clear that the State failed to disclose the report. The State maintained at trial that the report had been disclosed, while Mr. Gregory's counsel maintained that he had not seen it. Near the end of the discussion, Mr. Gregory's counsel asked to speak with the trial court off the record and, following that discussion, the report is not brought up again. Nothing in the record suggests that Mr. Gregory's counsel moved for a continuance or sought to have Mr. Boychi retake the stand. Additionally, several documents that appear to be police reports and which relay statements of Mr. Boychi were filed as part of the trial court record months before trial; some of those documents bear January 22, 2014 dates. It is unclear, however, whether any of those documents represent the allegedly withheld report; the contents of the report at issue were not proffered at trial or admitted into evidence.

{¶45} Assuming without deciding that there was a delay in disclosing the report, and that the contents were *Brady* material, Mr. Gregory has not explained how the delayed disclosure prejudiced him. *See Osie* at ¶ 155; *see* App.R. 16(A)(7). We are not inclined to develop an argument on his behalf. *See Cardone v. Cardone,* 9th Dist. Summit No. 18349, 1998 WL 224934, *8 (May 6, 1998).

{¶46} Mr. Gregory's fourth assignment of error is overruled.

III.

{¶47} Mr. Gregory's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.