[Cite as *State v. Anderson*, 2016-Ohio-7275.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    27886 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ROBERT C. ANDERSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 2014-11-3544 |

DECISION AND JOURNAL ENTRY

Dated: October 12, 2016

MOORE, Judge.

{¶1}   Defendant-Appellant Robert C. Anderson appeals from the judgment of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}   In December 2014, Mr. Anderson was indicted on one count of rape and one count of sexual battery involving an assault on his friend, S.F., which occurred on November 16, 2014.  The indictment was later supplemented to add an additional count of rape and a sexually violent offender specification that accompanied each of the rape charges.

{¶3}   The matter proceeded to a jury trial.  The jury found Mr. Anderson not guilty of the two counts of rape, but guilty of sexual battery.  Mr. Anderson was sentenced to five years in prison.

{¶4}   Mr. Anderson has appealed, raising three assignments of error for our review, which will be addressed out of sequence to facilitate our analysis.

II.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT GRANTING DEFENSE COUNSEL'S CRIMINAL RULE 29 MOTION.

{¶5}   Mr. Anderson argues in his third assignment of error that the trial court erred in denying his Crim.R. 29 motion because there was insufficient evidence presented by the State to allow a jury to find Mr. Anderson guilty of sexual battery.

{¶6}   "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 6, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33.  The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7}   Mr. Anderson was found guilty of sexual battery in violation of R.C. 2907.03(A)(3).  R.C. 2907.03(A)(3) states that, "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed."  "'Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal

opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B).

{¶8} S.F. met Mr. Anderson a few years prior to 2014 and the two became best friends. S.F. testified that she trusted Mr. Anderson completely. S.F. testified that she dated Mr. Anderson for a short period of time in September 2014, but it lasted only about a week. S.F. indicated that the last time the two had consensual sex was in September 2014. During November 2014, S.F. was dating someone else. In November 2014, S.F. was living with her boyfriend and Mr. Anderson was staying in the garage of S.F.'s mother's house. S.F.'s sister, niece, and brother also lived at S.F.'s mother's house.

{¶9} On November 16, 2014, S.F. was staying the night at her mother's house. For a short time, her boyfriend was also there and the two of them hung out in the basement. S.F.'s boyfriend left around 5:00 pm for out-of-town work. Sometime later, S.F.'s good friend Robert Kiefer came over.

{¶10} S.F. developed a headache and thought it may have been because her mother's house had mold, cockroaches and mice. Thus, when Mr. Anderson came down and asked if S.F. and Mr. Kiefer wanted to join him in the garage, she agreed to do so. The three sat in the garage and talked. Mr. Anderson was smoking marijuana.

{¶11} S.F. denied having any alcohol or drugs that day and said that at that point she had been sober for two months. She acknowledged that she had a history of prior drug abuse for which she received treatment in a psychiatric facility in August 2014. She also admitted that she

suffered from PTSD, depression, anxiety, and ADHD at that time. While S.F. had taken an aspirin while in her mother's house, she nonetheless still had a headache. She thus decided to lie down on the couch. She pulled a blanket over her and fell asleep. Mr. Kiefer had planned to spend the night at S.F.'s mother's at S.F.'s request, but after he began falling asleep in a chair, Mr. Anderson told Mr. Kiefer to leave. Mr. Kiefer kissed S.F. and told her goodbye but she did not respond as she was asleep. Both S.F. and Mr. Kiefer testified that S.F. was a heavy sleeper. Mr. Kiefer proceeded to walk home to his house around 10:30 p.m. Mr. Kiefer stated that S.F. had not had anything to drink that night.

{¶12} When S.F. awoke, she was lying on her stomach with Mr. Anderson on top of her. The jeans she had been wearing were not within her sight and the leggings she had had on underneath were down around her ankles. S.F. testified that she felt Mr. Anderson trying to insert his penis into her rectum and she thought that he had spit on her rectum as well. She testified that his penis did penetrate her rectum. Additionally, she also felt his fingers in her vagina, but was not sure if he penetrated her vaginally with his penis. While S.F. did not tell Mr. Anderson to stop, she did keep moving around in attempt to get him to stop. She indicated that she did not tell Mr. Anderson to stop because she had been assaulted in the past and did not want to get hurt any worse than she had already been hurt.

{¶13} Eventually, Mr. Anderson got off of her and S.F. wrapped herself up in the blanket. After she heard Mr. Anderson go to the door and it stayed silent for a while, S.F. contacted Mr. Kiefer and told him that she had been raped. Mr. Kiefer met S.F. and took her to his house and S.F. called 911 from there. Mr. Kiefer testified that S.F. was crying and "was very hysterical." Portions of the 911 call were played for the jury. During the 911 call, she told the operator that Mr. Anderson had pushed a tampon farther inside of her. S.F. testified that she

never has had consensual sex while wearing a tampon. She also testified that she was very upset and also angry with Mr. Anderson because she trusted him.

{¶14} S.F. told police that she had been asleep and awoke to find Mr. Anderson on top of her. She indicated that he had penetrated her both anally and vaginally. The police and medical personnel that interacted with S.F. testified that it did not appear that S.F. was under the influence of drugs or alcohol. S.F. was taken to the hospital and underwent a protocol using a rape kit. And while S.F. did not report any pain to the paramedics, she did report having pelvic and vaginal pain to the nurse who examined her. She also reported to the nurse that Mr. Anderson had tried to penetrate her anally with his penis and did penetrate her vaginally with his penis. S.F. told the nurse she was unsure whether there was vaginal penetration by Mr. Anderson's fingers. The nurse noted that the area around S.F.'s anus was very red. The nurse described S.F.'s demeanor as being intermittently tearful and angry during the examination.

{¶15} Samples taken from the rape kit were sent to the Ohio Bureau of Criminal Investigation ("BCI") for analysis. A single sperm cell was identified on the anal/perianal sample. Erika Jimenez, a forensic scientist from BCI, testified about the DNA results. Both STR and Y-STR analysis was performed on the samples. STR DNA testing was described as traditional DNA testing, while Y-STR DNA testing was described as male specific DNA testing. The Y-STR profile recovered from the vaginal swab, anal swab, and perianal swab was consistent with Mr. Anderson's DNA profile. The STR profile recovered from the anal swab was also consistent with Mr. Anderson's DNA profile. The STR profile from the perianal swab was inconclusive as to Mr. Anderson. S.F.'s boyfriend was excluded as a contributor to the samples taken.

{¶16} Portions of Mr. Anderson's statement to the police were also played for the jury. Mr. Anderson indicated that on the night of November 16, 2014, he left the garage to go for a walk a few minutes after Mr. Kiefer left and that when he left S.F. was still awake. Mr. Anderson told S.F. that he would be back in a little while. He also told the detective that he was stoned that night.

{¶17} Later in the interview, Mr. Anderson told police that after Mr. Kiefer left, and while S.F. was half asleep but mostly awake, he began touching S.F.'s rectum and vaginal area and admitting to use his spit for lubrication. He indicated that he did not undress S.F. According to Mr. Anderson, at one point, S.F. told him to stop and he did. Mr. Anderson denied penetrating S.F. with his penis or his fingers and never admitted to taking his clothes off. He also asserted that he had a medical condition that caused him to be unable to penetrate her with his penis at that time.

{¶18} Given the foregoing, we cannot conclude that the trial court erred in denying Mr. Anderson's Crim.R. 29 motion. Mr. Anderson's argument for this assignment of error is very broad and merely asserts that the trial court erred without providing specific reasons why the trial court did so. *See* App.R. 16(A)(7).

{¶19} Here, there was evidence that S.F. was asleep and that Mr. Anderson knowingly engaged in sexual conduct with her while she was asleep. *See* R.C. 2907.03(A)(3); *see also State v. Antoline,* 9th Dist. Lorain No. 02CA008100, 2003-Ohio-1130, ¶ 55 (noting that many prosecutions under R.C. 2907.03(A)(3) involve situations in which "the victim was either asleep or unconscious, and awakened to discover the offender engaging in sexual conduct with him or her[]"). Mr. Kiefer testified that S.F. was soundly asleep when he left and there was testimony that S.F. was a sound sleeper. There was also evidence presented that Mr. Anderson penetrated

S.F. both anally and vaginally. Further, the DNA profile recovered from the samples that were sufficient for analysis was consistent with Mr. Anderson's DNA profile and S.F.'s boyfriend was excluded as a possible contributor. Thus, the State presented sufficient evidence, if believed, that would allow a trier of fact to conclude that Mr. Anderson committed sexual battery. *See Bulls*, 2015-Ohio-276, at ¶ 6, quoting *Frashuer*, 2010-Ohio-634, at ¶ 33, and *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

{¶20} Mr. Anderson's third assignment of error is overruled.

### ASSIGNMENT OF ERROR I

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A FINDING OF GUILT FOR HAVING WEAPONS WHILE UNDER DISABILITY AND OBSTRUCTING OFFICIAL BUSINESS.[1]

{¶21} Mr. Anderson argues in his first assignment of error that there was insufficient evidence presented for a jury to find him guilty of sexual battery.

{¶22} The standard for reviewing the sufficiency of the evidence has been stated above. Mr. Anderson focuses much of his argument on alleged issues with S.F.'s credibility. He argues that it is unreasonable for a trier of fact to believe that Mr. Anderson could have removed S.F.'s jeans and leggings without S.F. waking up. He also points to the fact that S.F.'s sister, half-sister, and mother testified that they did not consider S.F. to be an honest person. However, in reviewing the sufficiency of the evidence, we do not consider credibility and instead view the evidence in a light most favorable to the State. *See Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

---

[1] While the assignment of error mentions having weapons under disability and obstructing official business, it appears that those errors are typographical. The argument itself appropriately discusses Mr. Anderson's conviction for sexual battery.

**{¶23}** As we noted above, sufficient evidence was presented, if believed, whereby a reasonable trier of fact could find beyond a reasonable doubt that Mr. Anderson committed the offense of sexual battery.

**{¶24}** Mr. Anderson's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE VERDICT OF GUILTY FOR SEXUAL BATTERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶25}** Mr. Anderson argues in his second assignment of error that the verdict of guilty for sexual battery was against the manifest weight of the evidence.

**{¶26}** When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

**{¶27}** In addition to the testimony discussed above, Mr. Anderson presented the testimony of S.F.'s mother, half-sister, and sister. Each of them testified that S.F. was not an honest person; however, they also all acknowledged that they were not inside the garage with S.F. and Mr. Anderson on the evening of November 16, 2014. Generally, S.F.'s version of events was consistent throughout the trial. Further, what she told police and medical personnel happened that night was also generally consistent. S.F. was unwavering in her assertion that Mr. Anderson engaged in sexual conduct with her while she was asleep; she consistently stated that she awoke to find Mr. Anderson penetrating her anally and vaginally. A DNA profile consistent with Mr. Anderson's profile was recovered from the vaginal, anal, and perianal swabs, whereas,

S.F.'s boyfriend was excluded as a contributor to the samples. Further, a sperm cell was noted on the anal/perianal sample, evidence that would tend to contradict the version of events Mr. Anderson provided during his police interview.

{¶28} Mr. Anderson seems to argue that, because S.F. woke up during the assault and did not object, Mr. Anderson could not have committed sexual battery. However, a logical inference from S.F.'s testimony is that Mr. Anderson was engaged in sexual conduct with S.F. while she was asleep. Accordingly, Mr. Anderson's argument is without merit. To the extent Mr. Anderson argues that a jury could not reasonably conclude that S.F. slept through having her jeans and leggings removed, we note that both S.F. and Mr. Kiefer testified that S.F. was a sound sleeper. Further, we remain mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *Bulls*, 2015-Ohio-276, at ¶ 17. Mr. Anderson also points to S.F.'s prior drug abuse and mental health issues as a basis for discrediting her testimony. The jury was aware that S.F. had a drug problem and had some mental health issues and was aware of her treatment in a psychiatric facility for her drug problem. However, the jury also heard from police and medical personnel that S.F. did not appear to be under the influence of drugs or alcohol when she was interviewed or examined.

{¶29} Given the totality of the record, we cannot conclude that the jury's credibility determinations were unreasonable. After thoroughly reviewing the entire record, we cannot say that the jury lost its way in finding Mr. Anderson guilty of sexual battery.

{¶30} Mr. Anderson's second assignment of error is overruled.

III.

{¶31} The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.